John BOYLE
v.
The UNITED STATES.
No. 300-60.

United States Court of Claims.
Nov. 7, 1962.

Jess Larson, Washington, D. C., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Joseph D. Guilfoyle, Acting Asst. Atty. Gen., for defendant.

DURFEE, Judge.

This is an action for refund of deductions made by defendant from plaintiff's compensation for legal services rendered under a series of contracts with the General Services Administration from 1953 to date.

Plaintiff was a patent lawyer who retired from Government service at the age of 70 in 1948 with retirement annuity. Immediately thereafter he was re-employed in the same status. This re-employment was finally terminated through a reduction in force by the General Services Administration (GSA) in 1953.

In June 1953 plaintiff was tendered, and accepted, a contract with GSA as Patent-Counsel on a per diem fee basis. Successive contracts have continued down to June 30, 1962. Deductions have been made from the amounts payable to plaintiff under these contracts of such portions of plaintiff's retirement annuity as was allocable to the period of services rendered. Plaintiff seeks to recover these deductions, which were made from 1953 to 1956 under the following provisions of the Civil Service Retirement Act,

5 U.S.C. (1952 ed.) 715(b) Sec. 2(b) Civil Service Retirement Act of 1930:

"No person who is receiving an annuity under the provisions of this Act and who has reached the age of sixty years shall be eligible again to appointment to any *appointive office, position, or employment* under the Government of the United States or of the District of Columbia, unless the appointing authority determines that he is possessed of special qualifications: *Provided,* That no deductions for the retirement fund shall be withheld from the *salary, pay, or compensation* of such person, but there shall be deducted from his *salary, pay, or compensation* otherwise payable a sum equal to the retirement annuity allocable to the period of actual employment: * *." [Emphasis supplied.]

As revised in 1956, Sec. 13(b) Civil Service Retirement Act of 1956, 70 Stat. 757, 5 U.S.C. (1958 ed.) § 2263(b), this provision reads as follows:

"If an annuitant under this chapter * * * hereafter becomes employed, or on July 31, 1956 is serving, in an *appointive or elective position,* his service on and after the date he was or is *so employed* shall be covered by this chapter. No deductions for the fund shall be withheld from his *salary,* but there shall be deducted from his *salary* * * * a sum equal to the annuity allocable to the period of actual employment * *." [Emphasis supplied.]

Plaintiff asserts that during the period of 1953 to 1962 when these successive contracts were in effect, he was not appointed "to any appointive office, position, or employment" in the Government, receiving "salary, pay, or compensation" within the meaning of section 2(b) of the Civil Service Retirement Act of 1930; nor was he "employed" or "serving, in an appointive or elective position," receiving "salary" from the Government within the meaning of section 13(b) of

the Retirement Act of 1956, on or after its effective date of July 31, 1956.

Plaintiff contends that he was engaged by the Government under these successive contracts as an independent contractor from 1953 to 1962, and therefore entitled to recover the deductions made from his compensation or fees.

The first contract was contained in a letter from the General Services Administration (GSA) dated June 24, 1953, and provided:

"Pursuant to the authority vested in me by Section 710(c) of the Defense Production Act of 1950, as amended, and Executive Order 10161, as amended, you are offered a contract as Patent Counsel for one (1) year, effective as of the date of this letter, on a retainer-fee basis of fifty dollars ($50.00) per diem, payable monthly, when called upon to render legal services relating to the business of this Administration.

"In connection with the performance of legal services, you will be provided with the necessary office space and secretarial assistance.

"The fee to be paid you shall not exceed four hundred dollars ($400) per month unless otherwise specifically authorized.

"All vouchers for professional services rendered, traveling expenses and subsistence should be prepared in accordance with standard Government regulations.

"*The arrangement herein set forth is that of attorney and client on a contract or fee basis and is not an appointment and either party may terminate this arrangement at will.*

"Please confirm that you will make your services available to the Administration upon the foregoing basis by indicating your acceptance on and returning the duplication of this letter which is enclosed." [Emphasis supplied.]

The subsequent contracts were essentially the same.

On December 27, 1955 the Comptroller General denied plaintiff's first claim for refund of the amounts withheld, and stated:

"* * * accounting officers of the Government consistently have ruled that where the compensation of an individual for services rendered by him is based upon the time actually worked, rather than upon the accomplishment of a particular result the services of the individual must be regarded as personal rather than contractual in nature. See 27 Comp.Gen. 695, 698; also, discussion in 26 Comp.Gen. 468 and cases cited therein. Further, in the absence of urgent and compelling reasons, a Government agency may not procure from an independent contractor services normally susceptible of being performed by Government employees. 27 Comp.Gen. 503. In that regard, we are informed that you now are performing the same duties on an intermittent basis that you performed under your appointment of January 1, 1949. Nothing is found in section 710(c) of the Defense Production Act of 1950, 64 Stat. 798, as amended, which would authorize your employment in contravention of the foregoing. Accordingly, if we are to regard your employment as legal in any respect, we must conclude that you are an employee of the Government, and that your compensation is subject to the provision of section 2(b) of the act of February 28, 1948. * * *"

Section 208(b) of the Federal Property and Administrative Services Act of 1949, 63 Stat. 391; 5 U.S.C. § 630h(b), provides:

"To such extent as he finds necessary to carry out the provisions of this chapter, chapter 10 of Title 40, chapter 4 of Title 41, and chapter 11 of Title 44, the Administrator is authorized to procure the temporary (not in excess of one year) or intermittent services of experts or consultants * * * by contract or appointment, and in such cases such service shall be without regard to the civil-service and classification laws, * * *."

Section 710(c) of the Defense Production Act of 1950, 64 Stat. 819, provides:

"The President is authorized, to the extent he deems it necessary and appropriate in order to carry out the provisions of this Act to employ experts and consultants * * *, as authorized by section 55a of title 5 of the United States Code. Individuals so employed may be compensated at rates not in excess of $50 per diem * * *."

Title 5 U.S.C. § 55a as referred to in the foregoing statutes, provides:

"The head of any department, when authorized in an appropriation or other Act, may procure the temporary (not in excess of one year) or intermittent services of experts or consultants * * * by contract, and in such cases such service shall be without regard to the civil-service and classification laws * * *."

Clearly, under these provisions, the head of the GSA had full authority to secure the "temporary—or intermittent" services of "experts or consultants" by "contract or appointment" and "in such cases such service shall be without regard to the civil-service and classification laws." The GSA expressly contracted with plaintiff pursuant to this authority. It is likewise clear from the contract that at the outset, both GSA and plaintiff intended to establish an independent contractor relationship, as distinguished from the employment status of a person holding "any appointive office, position or employment" receiving "salary, pay, or compensation" under the 1930 Retirement Act or "employed * * or serving in an appointive or elective position" and receiving "salary" under the 1956 Retirement Act.

The first contract specified that the arrangement was "that of attorney and

client on a contract or fee basis and is not an appointment and either party can terminate this arrangement at will," and the subsequent contracts were essentially the same, as concluded by the Comptroller General in his letter to plaintiff dated July 30, 1957.

■ Another basis of the denial by the Comptroller General was "that where the compensation of an individual for services rendered by him is based upon the time actually worked, rather than upon the accomplishment of a particular result the services of the individual must be regarded as personal rather than contractual in nature."

Plaintiff's compensation under the contract was based upon both considerations, viz.: the time that he actually worked and upon the accomplishment of a particular result in specific patent law problems. These specific problems were assigned solely to him and demanded the exercise of his own independent, professional judgment free from supervision or control as to any of his opinions or decisions. No officer or employee of GSA ever intervened in any such opinion or decision. His per diem fees, though limited in time and amount under Government restrictions applicable to outside experts and consultants, were paid for "the accomplishment of a particular result," in the words of the Comptroller General.

Plaintiff was not being paid a "salary" within the meaning of section 13(b) of the Civil Service Retirement Act of 1956. To reach a contrary conclusion would require us to disregard the explicit language of the contracts as to "retainer-fee basis," "fees" or "per diem payment," which are not fixed periodical stipends for regular weekly, monthly or annual periods of work. United States v. Gorman, 76 F.Supp. 218 (D.C. La., 1948); Benedict v. United States, 176 U.S. 357, 20 S.Ct. 458, 44 L.Ed. 503 (1900).

When Congress changed the authority for deductions from "salary, pay, or compensation" as expressed in the 1930 Retirement Act to "salary" as stated in the 1956 Act this was either to clarify the meaning of the earlier words "salary, pay, or compensation" or to further limit the deductions.

Section 2(b) of the Act of 1930 refers only to Federal annuitants "eligible again to appointment to any appointive office, position, or employment." Section 13(b) of the Act of 1956 refers to annuitants hereafter employed, or on July 31, 1956, are serving "in an appointive or elective position." Plaintiff was not appointed or elected; he was offered, and accepted, a contract which clearly intended that he was to be an independent contractor.

■ In the absence of any language indicating a contrary intent of Congress, we conclude that neither the Act of 1930 nor the Act of 1956 was intended to include plaintiff's attorney fees as being subject to the Civil Service Retirement pay deductions.

Another reason given by the Comptroller General for his denial of plaintiff's claim for refund of deductions was that "in the absence of urgent and compelling reasons, a Government agency may not procure from an independent contractor services normally susceptible of being performed by Government employees."

The evidence is clear, as set forth in our findings, that plaintiff's qualifications to serve the agency needs were unique in the particular area of patent law for which the Government contracted for his services. Immediately after his compulsory retirement at age 70 in 1948, he was re-employed pursuant to a determination by the War Assets Administration that he was "possessed of special qualifications," as required by section 2(b) of the Act of 1930. This re-employment was terminated through reduction in force on May 15, 1953. A month later GSA offered plaintiff his first part-time contract, since the volume of work was insufficient to require full-time services by plaintiff. From this apparent

compulsion on the part of GSA to acquire plaintiff's particular services, it is clear that the agency had "urgent and compelling reasons" to procure plaintiff's services on a contract basis, and that these were not "services normally susceptible of being performed by Government employees," as concluded by the Comptroller General.

During plaintiff's service as a full-time employee, prior to the first contract in 1953, he reported for work regularly and worked regular hours as required by regulations. After 1953, he came to work when he saw fit and kept no regular office hours.

As an employee prior to 1953, he was under general supervision as to the performance of his work, which came to him automatically through established supervisory channels. After 1953, as a contractor, his case assignments did not flow through established channels of supervision. The particular patent cases and problems of which he had unique knowledge were referred to him directly by the General Counsel or by the Assistant General Counsels of the various divisions of GSA entirely without regard one to the other. The matters on which he worked and the results of his actions were entirely within his own unsupervised determination.

The evidence discloses that under the several letter contracts with GSA, plaintiff had rendered extensive services as a consultant and expert adviser to the Department of Justice. Consultations had been arranged by and between plaintiff and the Department of Justice entirely without supervision or review by GSA of any appointment made or advice given by plaintiff.

Defendant concedes that viz-a-viz his client, a lawyer is the classic example of an independent contractor, but that a lawyer who is paid a salary as a member of the legal staff of a corporation, the lawyer employed by a large law firm, or the lawyer working in a Government agency, clearly has the status of an employee.

Plaintiff was not paid a "salary;" he contracted to work on what the GSA correctly described as a "retainer-fee" and "per diem" basis. He was not a member of the legal staff of the GSA; his services were contracted for under a special statute because he was an expert and consultant with unusual and unique qualifications in his field. He was completely free from supervision in the determination of the specific cases and problems assigned to him.

We conclude that plaintiff was not hired as an employee under the provisions of either the 1930 or 1956 Civil Service Retirement Acts which authorized deductions from the salary of re-employed Federal annuitants. Under the written contracts and the particular facts, plaintiff was an independent contractor, validly engaged as an expert and consultant under section 710 of the Defense Production Act as implemented. Plaintiff is entitled to judgment for refund of the retirement deductions withheld from his compensation from June 29, 1953, to date.

Plaintiff bases his claim upon a breach of his contract with the GSA, alleging that defendant failed to fully compensate him for his services pursuant to the terms of the contract. The statute provides that interest may not be awarded by this court on claims based on contract unless the contract itself calls for interest. 28 U.S.C. § 2516. Mississippi Valley Generating Co. v. United States, 175 F.Supp. 505, 147 Ct.Cl. 1, rvs'd. on other grounds, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268. Plaintiff's contract does not provide for the payment of interest.

Judgment will be entered for plaintiff with the amount of recovery to be determined pursuant to Rule 38(c).

JONES, Chief Judge, and DAVIS, LARAMORE, and WHITAKER, Judges, concur.